UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

HERSCHEL T. VINYARD, JR., Secretary,
Florida Department of Environmental Protection,
and Lead Trustee for the Natural Resources of the
State of Florida; and EUGENE "NICK" WILEY,
Executive Director, Florida Fish and Wildlife
Conservation Commission, and Trustee for the
Natural Resources of the State of Florida,

   Plaintiffs,

  v.                   Case No.

BP EXPLORATION & PRODUCTION INC.; BP
AMERICA PRODUCTION COMPANY; BP PLC;
ANADARKO E&P COMPANY LP; ANADARKO
PETROLEUM CORPORATION; TRANSOCEAN
LTD.; TRANSOCEAN HOLDINGS LLC;
TRANSOCEAN OFFSHORE DEEPWATER
DRILLING INC.; TRANSOCEAN DEEPWATER
INC.; and TRITON ASSET LEASING GMBH,

   Defendants.        /

**COMPLAINT**

  Plaintiffs, Herschel T. Vinyard, Jr., Secretary, Florida Department of Environmental Protection, and lead trustee for the natural resources of the State of Florida; and Eugene "Nick" Wiley, Executive Director of the Florida Fish and Wildlife Conservation Commission, and trustee for the natural resources of the State of Florida,

allege the following in support of their complaint against the Defendants identified below:[1]

## NATURE OF THE ACTION

1. This civil action arises out of the environmental disaster that began in the Gulf of Mexico on April 20, 2010, when an uncontrolled well event, blowout, multiple explosions and fires destroyed the Mobile Offshore Drilling Unit ("MODU") *Deepwater Horizon* and resulted in the release of millions of gallons of oil and hundreds of thousands of gallons of diesel fuel into the Gulf of Mexico (the "*Deepwater Horizon* Spill" or the "Spill"). The *Deepwater Horizon* Spill caused, is causing, and will continue to cause, extensive damages to the State of Florida's natural resources. This is an action for declaratory relief against the responsible parties for the massive release of oil and diesel fuel into the Gulf of Mexico and the subsequent damages to Florida's natural resources.

2. The Defendants named in this action were owners and/or operators of the *Deepwater Horizon* or were permittees and/or lessees of the area known as the "Macondo Prospect" in Mississippi Canyon Block 252 in the Gulf of Mexico. Defendants were engaged in activities related to the drilling and operation of an oil well in the Macondo Prospect (the "Macondo Well").

---

[1] On April 20, 2013, the State of Florida filed a First Amended Complaint in this District seeking economic damages under the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701 *et seq.* (the "OPA"), Florida common law, and maritime law. This Complaint, brought by the Trustees of Florida's natural resources, seeks declaratory relief for damages related to those natural resources under the OPA and the Declaratory Judgment Act.

3. While the full extent of the *Deepwater Horizon* Spill and the environmental damages may not be known for years, the impacts to date have been widespread and severe, damaging the organisms, habitats and ecosystems in Florida waters and to Florida's coastline.  The damages include, but are not limited to, damages to Florida's sandy beaches, salt marshes, wetlands, estuaries, submerged aquatic vegetation, deepwater communities and coral reefs as well as injuries to numerous wildlife species and aquatic species including fish, sea turtles, oysters, birds, and manatees.  Under the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701 *et seq.* (the "OPA")*,* the Plaintiffs are authorized to seek a declaration that the Defendants are responsible and strictly liable for past and/or future removal costs and natural resource damages, including the loss of recreational and other uses of those resources.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this lawsuit under 33 U.S.C. § 2717(b) of the OPA, and under 28 U.S.C. § 1331 because the suit arises under the OPA and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* (the "DJA").  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) and 33 U.S.C. § 2717(b) of the OPA.

## THE PLAINTIFFS

5. Herschel T. Vinyard, Jr. is the Secretary of the State of Florida Department of Environmental Protection, and has been designated to act on behalf of the public as lead trustee for natural resources under the OPA pursuant to 33 U.S.C. § 2706(b)(3).

3

6. Eugene "Nick" Wiley is the Executive Director of the State of Florida Fish and Wildlife Conservation Commission, and has been designated to act on behalf of the public as trustee for natural resources under the OPA pursuant to 33 U.S.C. § 2706(b)(3).

## THE DEFENDANTS

7. At all times material herein, BP Exploration & Production Inc. ("BPXP") is and was incorporated in the State of Delaware with its principal place of business in Houston, Texas, and with its principal purpose being oil and gas exploration and production. BPXP is registered to conduct business in Florida and maintains continuous and systemic contacts in Florida. Actions of BPXP have had direct impacts within the State of Florida and within this District including, but not limited to, direct impacts resulting from the Spill.

8. At all times material herein, BP America Production Company ("BP America") is and was incorporated in the State of Delaware with its principal place of business in Houston, Texas. BP America is registered to conduct business in Florida and maintains continuous and systemic contacts in Florida. Actions of BP America have had direct impacts within the State of Florida and within this District including, but not limited to, direct impacts resulting from the Spill.

9. At all times material herein, BP p.l.c. is and was a British multinational oil and gas company headquartered in London, United Kingdom. BP p.l.c. is the global parent of the worldwide business operating under the "BP" logo. Defendants BPXP and BP America are wholly owned subsidiaries of BP p.l.c. and are sufficiently controlled by

BP p.l.c. so as to be BP p.l.c.'s agents in Florida. BP p.l.c. maintains continuous and systemic contacts in Florida. BP p.l.c. acknowledged financial responsibility for damages caused by the Spill, including, but not limited to, damages under the OPA. Actions of BP p.l.c. have had direct impacts within the State of Florida and within this District including, but not limited to, direct impacts resulting from the Spill. (Defendants BPXP, BP America, and BP p.l.c. are collectively referred to herein as "BP" or the "BP Defendants.")

10. At all times material herein, Defendant Anadarko E&P Company LP ("Anadarko E&P") is and was incorporated in the State of Delaware with its principal place of business in The Woodlands, Texas. Actions of Anadarko E&P have had direct impacts within the State of Florida and within this District including, but not limited to, direct impacts resulting from the Spill.

11. At all times material herein, Defendant Anadarko Petroleum Corporation ("Anadarko Petroleum") is and was incorporated in the State of Delaware with its principal place of business in Houston, Texas. Actions of Anadarko Petroleum have had direct impacts within the State of Florida and within this District including, but not limited to, direct impacts resulting from the *Deepwater Horizon* Spill. (Defendants Anadarko E&P and Anadarko Petroleum are collectively referred to herein as "Anadarko" or the "Anadarko Defendants.")

12. At all times material herein, Defendant Transocean Holdings LLC ("Transocean Holdings") is and was incorporated in the State of Delaware with its principal place of business in Houston, Texas. Actions of Transocean Holdings have had

5

direct impacts within the State of Florida and within this District including, but not limited to, direct impacts resulting from the *Deepwater Horizon* Spill.

13. At all times material herein, Defendant Transocean Offshore Deepwater Drilling Inc. ("Transocean Offshore") is and was incorporated in the State of Delaware with its principal place of business in Houston, Texas. Transocean Holdings is a wholly-owned subsidiary of Transocean Offshore. Actions of Transocean Offshore have had direct impacts within the State of Florida and within this District including, but not limited to, direct impacts resulting from the *Deepwater Horizon* Spill.

14. At all times material herein, Defendant Transocean Deepwater Inc. ("Transocean Deepwater") is and was incorporated in the State of Delaware with its principal place of business in Houston, Texas. Actions of Transocean Deepwater have had direct impacts within the State of Florida and within this District including, but not limited to, direct impacts resulting from the *Deepwater Horizon* Spill.

15. At all times material herein, Defendant Triton Asset Leasing GmbH ("Triton") is and was a Swiss limited liability company with its principal place of business in Zug, Switzerland. Actions of Triton have had direct impacts within the State of Florida and within this District including, but not limited to, direct impacts resulting from the *Deepwater Horizon* Spill.

16. At all times material herein, Defendant Transocean Ltd. is and was a Swiss corporation that maintains substantial U.S. offices in Houston, Texas. Transocean Ltd. is the holding company of an international group of companies involved in the oil and gas industry. Defendants Transocean Holdings, Transocean Offshore, Transocean

Deepwater, and Triton are directly or indirectly owned by Transocean Ltd. and are sufficiently controlled by Transocean Ltd. so as to be Transocean Ltd.'s agents in Florida. Actions of Transocean Ltd. have had direct impacts within the State of Florida and within this District including, but not limited to, direct impacts resulting from the *Deepwater Horizon* Spill.  (Transocean Ltd., Transocean Holdings, Transocean Offshore, Transocean Deepwater, and Triton are collectively referred to herein as "Transocean" or the "Transocean Defendants.")

## FACTUAL ALLEGATIONS

17. On or about May 8, 2008, BPXP, as lessee, executed the document known as the "Oil and Gas Lease of Submerged Lands under the Outer Continental Shelf Lands Act," "Serial number OCS-G 32306" (the "Lease"), pertaining to "All of Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10."  The Lease authorized drilling and oil production-related operations at the Macondo Prospect.  The Lease became effective on June 1, 2008.

18. Through a series of agreements and assignments pertaining to the Lease, BPXP and the Anadarko Defendants became co-lessees and held ownership interests in the Lease.

19. On February 23, 2010, BPXP and Anadarko E&P filed an "Assignment of Record Title Interest in Federal OCS Oil and Gas Lease" pertaining to the Lease, whereby BPXP assigned Anadarko E&P a 22.5% interest in the Lease.

7

20. On February 23, 2010, BPXP and Anadarko E&P filed an "Assignment of Record Title Interest in Federal OCS Oil and Gas Lease" pertaining to the Lease, whereby BPXP assigned Anadarko Petroleum a 2.5% interest in the Lease.

21. On April 20, 2010, and continuing until at least April 28, 2010, BPXP held a 65% interest in the Lease, Anadarko E&P held a 22.5% interest in the Lease, and Anadarko Petroleum held a 2.5% interest in the Lease.

22. On or about April 28, 2010, a change to the foregoing percentages of interests in the Lease was made, such that BPXP held a 65% interest in the Lease, and Anadarko Petroleum held a 25% interest in the Lease.

23. At all times material herein, a Joint Operation Agreement (the "JOA") required that BPXP obtain the approval of Anadarko to proceed with nondiscretionary operations in connection with the Lease by, *inter alia*, seeking its authorization for the expenditure of funds and/or by seeking its election or vote to participate in the next stage of operations. The JOA also provided for the sharing, in amounts proportionate to the working interest of each party, of any oil and gas discovered in connection with the Lease and of losses resulting from the approved activities.

24. The JOA required BPXP to provide Anadarko with detailed technical information regarding exploration and other operations performed in connection with the Lease, including applications for and modifications of permits to drill, mud logs, mud checks, and other information. Anadarko had the right to obtain "real time" data as set forth in Section 5.7 of the JOA. Pursuant to the JOA, Anadarko received detailed technical information regarding operations conducted in connection with the Lease and

the JOA, including daily reports, access to a secure website containing sampling and other data, and access to real time data.

25. The JOA provided for the prompt invoicing by BPXP of costs incurred under the JOA and prompt payment of their agreed-upon share by Anadarko including the costs of the well casing and wellhead and other materials purchased by BPXP. The JOA was and is an enforceable contract, and provided Anadarko with a mechanism to object to, prevent, control, address, and/or abate discharges or health and safety issues in connection with the Lease.

26. On various dates, each of the Anadarko Defendants designated BPXP as the operator and local agent for the Anadarko Defendants with full authority to act on said co-lessees' behalf in complying with the terms of the Lease and applicable regulations.

27. On December 12, 1998, and through subsequent amendments, BP contracted with one or more of the Transocean Defendants for operation and use of a MODU for, *inter alia*, the purpose of drilling wells in the waters of the Gulf of Mexico. Under this contract and its amendments, one or more of the Transocean Defendants drilled an exploratory well at and within the Macondo Prospect.

28. From at least October 1, 2009, the MODU *Transocean Marianas* was owned and/or operated by the Transocean Defendants. In or about October 2009, the *Transocean Marianas* began to be used for drilling of the Macondo Well.

29. In or about October 2009, drilling began of an exploratory well pursuant to the Lease at and within the Macondo Prospect.

9

30. On or about January 31, 2010, the *Deepwater Horizon* replaced the *Transocean Marianas* for the purpose of continuing the drilling of the Macondo Well. Drilling of the Macondo Well using the *Deepwater Horizon* continued through a portion of April 2010.

31. At all times material herein, the *Deepwater Horizon* was flagged under the laws of the Republic of the Marshall Islands and was owned and/or operated by the Transocean Defendants.

32. At all material times herein, the *Deepwater Horizon* was a MODU, a vessel and/or an offshore facility.

33. As of April 20, 2010, various sub-sea equipment and components of the Macondo Well had been installed on or below the seafloor of the Outer Continental Shelf, including, but not limited to, the well casing and the well head.

34. As of April 20, 2010, *Deepwater Horizon* and various appurtenances of the *Deepwater Horizon,* including, but not limited to, the Blowout Preventer ("BOP") and Lower Marine Riser Package ("LMRP") (together the "BOP stack")*,* had been installed on and/or attached to the seafloor of the Outer Continental Shelf, purportedly for purposes of, *inter alia*, operation of the Macondo Well, including well control.

35. On April 20, 2010, the Macondo Well experienced an uncontrolled well event and an uncontrolled blowout of, *inter alia*, oil and methane gas.

36. Each Defendant caused and/or contributed to the *Deepwater Horizon* Spill by failing to assure well control of the Macondo Well through, *inter alia*: actions, corporate actions, and/or corporate practices of disregarding federal regulations, as

evidenced by various safety and other audits of *Deepwater Horizon*, reflecting the known failure, prior to the *Deepwater Horizon* Spill, to properly design, install, maintain, repair, and operate equipment intended to prevent personal injury, loss of life, harm to the environment, and disasters like the *Deepwater Horizon* Spill.

37. As a result of the April 20, 2010 uncontrolled well event and uncontrolled blowout, multiple explosions and fires occurred aboard the *Deepwater Horizon*.

38. On or about April 22, 2010, at the time of the *Deepwater Horizon*'s sinking, hundreds of thousands of gallons of diesel fuel were on board the MODU.

39. As a result of the uncontrolled well event, uncontrolled blowout, multiple explosions, and fires, millions of barrels of oil and diesel fuel were discharged into and upon waters of the Gulf of Mexico, including the territorial waters of the State of Florida, and its adjoining shorelines.

40. On and after April 20, 2010, oil and diesel fuel flowed from the Macondo Well, associated equipment, the BOP stack, the marine riser, and the *Deepwater Horizon*, and into and upon waters of the Gulf of Mexico, including the territorial waters of the State of Florida, and its adjoining shorelines.

41. As a result of the *Deepwater Horizon* Spill, natural resources, as that term is defined in the OPA, 33 U.S.C. § 2701(20), have been injured, destroyed, or lost.

42. Natural resources for which the Plaintiffs are delegated trustees have been injured, destroyed, or lost as a result of discharged oil and diesel fuel and associated removal efforts. The discharged oil and diesel fuel are harmful to natural resources exposed to the oil and diesel fuel, including aquatic organisms, birds, wildlife, vegetation,

11

and habitats. Discharged oil and diesel fuel and some of the response activities to address the discharges of oil and diesel fuel have resulted in injury to, loss of, loss of use of or destruction of natural resources in and around the Gulf of Mexico and along adjoining shorelines of the State of Florida.

43. The full extent of the natural resource damages, including but not limited to the injuries to, destruction of, and loss of use of those resources, is not yet fully known and may not be fully known for many years. Natural resources that have been injured, destroyed, or lost include, but are not limited to, hundreds of miles of coastal habitats, including salt marshes, sandy beaches, and mangroves; a variety of wildlife, including birds, sea turtles, and marine mammals; and waters of the Gulf of Mexico, including various biota, benthic communities, marine organisms, coral, fish, and water-column habitat. These damages further include lost human-use opportunities associated with various natural resources in the State of Florida, including but not limited to fishing, swimming, beach-going, and viewing of birds and wildlife.

44. As a result of the *Deepwater Horizon* Spill, the State of Florida has sustained, continues to sustain, and will sustain in the future, removal costs and damages to natural resources, including the loss of use of those resources, within the meaning of the OPA, 33 U.S.C. § 2702(b).

## COUNT ONE

### Declaratory Judgment for Strict, Joint and Several Liability
### Under the Oil Pollution Act, 33 U.S.C. §§ 2701 *et seq.*
### Against BP, Anadarko, and Transocean

45. Paragraphs 1 through 44 are re-alleged and incorporated by reference herein.

46. The OPA establishes a strict liability scheme which holds responsible parties liable for natural resource damages related to oil spills. The OPA provides that each responsible party for a vessel or facility from which oil is discharged "into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages … that result from such incident." 33 U.S.C. § 2702(a).

47. Responsible parties for an offshore facility include the lessee or permittee of the area in which the facility is located or the holder of a right to use easement granted under applicable state law or the Outer Continental Shelf Land Act, 43 U.S.C. § 1301 *et seq.,* for the area in which the facility is located. Responsible parties also include persons owning, operating, or demise chartering the vessel. 33 U.S.C. § 2701(32).

48. A MODU can be considered both a vessel and an offshore facility for the purposes of the OPA. 33 U.S.C. § 2701(18).

49. The *Deepwater Horizon* was a vessel within the meaning of 33 U.S.C. § 2701(32)(A) and (37).

50. The Macondo Well, the *Deepwater Horizon* when connected to the Macondo Well, and its appurtenances were located in, on or under the navigable waters of the United States, were a facility subject to the jurisdiction of the United States and

13

located in, on, or under any other waters, and were therefore an offshore facility within the meaning of 33 U.S.C. § 2701(22) and 32(C).

51. As a result of contractual agreements alleged and identified herein and as a result of the actions and corporate relationships among the parties, BP, Anadarko, and Transocean are Responsible Parties within the meaning of 33 U.S.C. § 2701(32) and are jointly and severally liable and responsible to the Plaintiffs for natural resource damages as defined in 33 U.S.C. § 2702(b)(2)(A).

52. BP was a permittee and lessee within the meaning of 33 U.S.C. § 2701(16), (28), and (32)(C), and is thus a "responsible party" within the meaning of 33 U.S.C. §§ 2701(32)(C) and 2702 and is strictly liable for past and/or future removal costs and natural resource damages arising from the Spill.

53. Anadarko was a lessee within the meaning of 33 U.S.C. § 2701(16) and (32)(C), and is thus a responsible party within the meaning of 33 U.S.C. §§ 2701(32)(C) and 2702 and is strictly liable for past and/or future removal costs and natural resource damages arising from the Spill.

54. Transocean was an owner or operator of the *Deepwater Horizon*, and is thus a responsible party within the meaning of 33 U.S.C. §§ 33 U.S.C. §§ 2701(32)(A) and 2702 and is strictly liable for past and/or future removal costs and natural resource damages arising from the Spill.

55. The U.S. Coast Guard has named BP and Transocean as responsible parties for the Spill pursuant to 33 U.S.C. § 2714(a).

56. The DJA allows a federal court to declare the rights and other legal relations of any interested party seeking such declaration in an actual controversy within its jurisdiction.

57. The facts and circumstance alleged herein present an actual and existing controversy between BP, Anadarko, and Transocean, and the Plaintiffs.

58. Pursuant to the DJA and the OPA, the Plaintiffs are entitled to a declaratory judgment that is binding in this action and any subsequent action or actions against Defendants BP, Anadarko, and Transocean, jointly and severally without any limitation that said Defendants are strictly liable for past and/or future removal costs and natural resource damages in this action and in any such subsequent action or actions.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray the Court:

1. Enter a declaratory judgment that Defendants BP, Anadarko, and Transocean are jointly and severally liable without limitation under 33 U.S.C. § 2702(a) of the OPA for all past and/or future removal costs and natural resource damages related to the *Deepwater Horizon* Spill which will be binding on this action and any subsequent action or actions to recover past and/or future removal costs or natural resource damages; and

2. Grant such other relief as the Court deems just and proper.

Respectfully Submitted,


s/ Kenneth von Schaumburg
Kenneth von Schaumburg* (D.C. Bar No. 987204)
John A. Sheehan* (D.C. Bar No. 403838)
Jane C. Luxton (D.C. Bar No. 243964)
Christopher B. Clare (D.C. Bar No. 1012976)
Clark Hill PLC
601 Pennsylvania Ave., N.W.
North Building, Suite 1000
Washington, D.C. 20004
Tel: (202) 772-0909
Fax: (202) 772-0919
*Counsel of Record

s/John E. Berg
John E. Berg* (Michigan Bar No. P40428)
Clark Hill PLC
500 Woodward Avenue
Suite 3500
Detroit, MI 48226
Tel: (313) 965-8300
Fax: (313) 965-8252
*Counsel of Record

s/ Larry Morgan
Larry Morgan (Florida Bar No. 0220205)
Florida Department of Environmental Protection
3900 Commonwealth Blvd. MS-35
Tallahassee, FL 32399
Tel: (850) 245-2246
Fax: (850) 245-2301

s/ Gareth Leonard
Gareth Leonard (Florida Bar No. 0069529)
Florida Department of Environmental Protection
3900 Commonwealth Blvd. MS-35
Tallahassee, FL 32399
Tel: (850) 245-2222
Fax: (850) 245-2301

s/ Stuart Barks
Stuart Barks (Florida Bar No. 0071457)

Florida Department of Environmental Protection
3900 Commonwealth Blvd. MS-35
Tallahassee, FL 32399
Tel: (850) 245-2248
Fax: (850) 245-2301

s/ Harold G. "Bud" Vielhauer
Harold G. "Bud" Vielhauer (Florida Bar No. 0608350)
Florida Fish and Wildlife Conservation Commission
620 S. Meridian St.
Tallahassee, FL 32399
Tel: (850) 487-1764
Fax: (850) 487-1790

s/ Ryan S. Osborne
Ryan S. Osborne (Florida Bar No. 0022819)
Florida Fish and Wildlife Conservation Commission
620 S. Meridian St.
Tallahassee, FL 32399
Tel: (850) 487-1764
Fax: (850) 487-1790

*Counsel for Plaintiffs Herschel T. Vinyard, Jr., Secretary, Florida Department of Environmental Protection, and Lead Trustee for the Natural Resources of the State of Florida; and Eugene "Nick" Wiley, Executive Director, Florida Fish and Wildlife Conservation Commission, and Trustee for the Natural Resources of the State of Florida*